Parker *v.* Burgett et al.

---

ALFRED J. PARKER, TREASURER OF BROWN COUNTY, *v.* JAMES F. BURGETT ET AL.

1. Under section 5 of the road improvement act of March 31, 1868, as amended May 9, 1868, the commissioners have power, at any time before the confirmation of the report of the apportionment committee, to include in the assessment any lands which they may find to have been omitted by the viewers; and this power extends to all lands, thus omitted, lying within two miles of the improvement, which are benefited by and ought to be assessed to pay for the same.

2. In a proceeding before the county commissioners under the road improvement acts, it is not necessary that a majority of the resident landholders whose lands are *finally* assessed should have signed the petition, in order

to render the proceedings valid. If the order for the improvement was valid when made, it will not be rendered invalid by the subsequent addition of lands which had been omitted, whether such lands are owned by residents or non-residents.

3. The power given to the commissioners, by the acts first above named, of assessing lands which have not been returned by the viewers, where, in a pending proceeding, the improvement had been ordered before the act conferring the power was passed, is not in conflict with section 28, article 2, of the constitution.

ERROR to the District Court of Brown county.

The original action was brought by James F. Burgett and others, defendants in error, against Alfred J. Parker, treasurer, plaintiff in error, to enjoin the collection of an assessment for the improvement of a county road, which improvement is known in the proceedings as the Ripley and Arnheim road improvement.

At the June session, 1866, of the commissioners of Brown county, a petition was presented signed by 112 persons, asking for the improvement; and before the improvement was ordered, the petition was signed by 23 additional subscribers, making in all 135 petitioners.

At the same session the proper order for a view and survey was made.

At the following September session, the viewers and engineer having made their report, showing the public necessity of the improvement, and an estimate of the expense of the same, and the lots and lands within two miles of the improvement, which would be benefited thereby and ought to be assessed to pay the expense, the commissioners found that a majority of the landholders, resident of the county, whose lands were returned for assessment, and who would be benefited by the improvement, had signed the petition, and the commissioners ordered the improvement to be made, and directed that the lands reported by the viewers and engineer should be assessed to pay the expenses of the improvement.

At the same session three freeholders were appointed to

apportion the estimated expense upon the lands embraced in the order, according to the benefit to be derived by each tract from the improvement.

These freeholders appear not to have acted.

On August 5, 1867, a contract was entered into for the performance of the work.

The progress of the work was interrupted by litigation.

But on January 5, 1870, the matter of the improvement again came before the commissioners, for the purpose, among other things, of assessing the cost and expense of the improvement upon the lands theretofore returned for assessment, and upon such other lots and lands within the limits of the territory sought to be assessed, as were omitted by the former viewers, and which would be benefited by the improvement, and ought to be assessed to pay the expense of the same.

On hearing, the commissioners appointed three disinterested freeholders of the county to make said apportionment, and directed them to proceed as follows : " That said viewers and committee do, upon actual view of the premises, apportion the estimated expense of said improvement upon the real property embraced in orders hereinbefore made, and upon such other property within the limits of the territory hereinbefore sought to be assessed, but was omitted by the viewers hereinbefore appointed, according to the benefit to be derived therefrom to each of said lots or parcels of land ; and in making said apportionment, that they take into consideration previous assessments, if any, made upon such real property for the improvement of said road, and any benefit which may accrue to any land or lands by reason of drainage resulting from the making of said improvement."  .  .  .

Under this order the lands of the plaintiffs below, described in their petition, and lying within two miles of the improvement, were returned as benefited and subject to be assessed for the cost of the improvement ; and the estimated expense was apportioned upon such lands as well as those returned by the first viewers.

This report was excepted to by the plaintiffs below on the ground that, as their lands were not returned as benefited by the viewers first appointed, such lands were not subject to assessment; also on the ground that the lands were not benefited by the improvement.

On the 12th of July, 1870, the commissioners made the following order on the exceptions: "This day this cause came on for further hearing on the exceptions of J. W. Alexander and others, and on motion to strike off all persons from said assessment who were not returned as benefited by the first viewers on said road improvement, after a careful examination of said report, and hearing all the testimony offered, and the arguments of counsel in support of said motion, said motion to strike off was overruled, and it was ordered that said persons be retained on said assessment."

The matter was afterward referred to a new committee, who likewise reported in favor of assessing the same lands as were returned by the former committee.

The last report was also excepted to by the plaintiffs below; but on October 28, 1870, the commissioners overruled the exceptions and ordered the lands to stand charged as reported.

An injunction is sought by the plaintiffs against the collection of the assessments levied on their lands, on the ground that the commissioners had no authority to add such lands, for the purpose of assessment, to those reported by the viewers first appointed, and that the assessments thus levied against the lands of the plaintiffs are void.

The petition of the plaintiffs was filed February 7, 1871.

The answer of the defendant sets up, in substance, that, on the 5th day of January, 1870, before the estimated expense of the improvement had been assessed, the commissioners found that the plaintiffs' said lands were all within two miles of the improvement, and constituted part of the territory sought to be assessed to pay the expense of the improvement; that said lands were all benefited by the improvement, and that all of said parcels of land had been.

omitted in the report of the viewers first appointed, and that the commissioners thereupon ordered all of said several parcels of land to be added to the list of lands theretofore returned by the viewers, and that the expense of said improvement should be apportioned and assessed on all of said lands.

The answer also sets up that the assessments upon the several parcels of land are fair and equitable, and that a majority of the resident landholders, excluding those who were omitted by the viewers, whose lands were reported as benefited and to be assessed, did sign the petition for the improvement before the same was ordered by the board of commissioners.

The plaintiffs demurred to the answer, the demurrer was sustained, and a judgment rendered by the district court perpetually enjoining the collection of the assessments.

The present petition in error is prosecuted to reverse the judgment of the district court.

*Devore, Thompson & Fite,* and *Marshall, Thomas & Dunn,* for plaintiff in error :

We concede that under the act of 1866 (63 Ohio L. 114), before referred to, and the amendatory act of 1867, the commissioners had no power by subsequent order to assess lands not embraced in their first order for that purpose. But we think the statute of 1868 (Ohio Laws, vol. 65, p. 178) fully authorized the commissioners to make the order of January 5, 1870. The act of 1867 repealed the act of 1866, but saved all proceedings then pending under the repealed act. See secs. 12 and 13, Ohio Laws, vol. 64, pp. 84, 85. The act of 1868, section 5, amends that of 1867, and among other things provides, that " if, at any time after making such final order, the commissioners shall find that there has been an omission of lots or lands within the territory sought to be assessed, . . . they are authorized to make such addition . . . as they deem just and proper."

It was manifestly the intention of the legislature in passing this act to give the county commissioners the fullest authority to do right and enforce justice. Whatever they deem just in adding lots or lands within the territory sought to be assessed, they are authorized to do. Then if the defendants' lands are within the territory sought to be assessed and had been omitted, the commissioners were authorized to add them to the list. Were they within the territory sought to be assessed? The following considerations will, we think, afford an answer to this question:

It was the duty of the commissioners, in the first instance, to order all lands and lots within two miles of the improvement, if benefited by it, to be assessed.

The language used by them in this first order warranted the conclusion that they so intended.

Their order of January 5, 1870, is inconsistent with any other conclusion, and shows, by necessary implication, that they had ascertained that the defendants' lands had been omitted, and that they were within the territory sought to be assessed.

It is claimed that the act of 1868, authorizing lands to be added which had not previously been ordered to be assessed, is retroactive, and therefore unconstitutional. We think this proposition untenable, else all legislation for the purpose of curing defects, supplying omissions, and correcting mistakes is unconstitutional.

In a word, we maintain that by the presentation of the petition and the execution of the bond to obtain the preliminary view and survey, the county commissioners acquired jurisdiction to inquire as to the liability to assessment to pay the expense of the proposed improvement of every acre of land within two miles of the road (and not within another territorial jurisdiction), and that if in the exercise of this jurisdiction they erred, it was competent for the legislature to clothe them with the power to correct the error, and it does not matter if, in correcting the error, the provisions of the original act are not complied with. The power once vested was suspended and perhaps lost by an

oversight or an error in judgment, but it was reinstated by the same authority whence it was first derived, and it is totally immaterial to the just exercise of the power whether the legislature required the additions to be limited to such numbers as would leave the majority undisturbed. The legislature might have so required, but the only thing necessary on the part of the commissioners to the exercise of the power, is that they shall find that there has been an omission of lots or lands; they are then authorized to make such addition as they deem just and proper.

The record shows that each of the defendants appeared before the commissioners on July 11, 1870, and sought to have their lands released from the assessment theretofore levied upon them, and that, on the 2d day of August, the same year, the commissioners refused to release them; and it is averred in the answer that the work of constructing the improvement was then going on, and was continued without objection or attempted hinderance from the defendants, or either of them, up to the time of commencing the action, and that about $30,000 worth of work was done within the time. We think, in view of these undenied facts, the doctrine of estoppel as settled in *Kellogg, Treasurer, etc.* v. *Ely*, 15 Ohio St. 64, and *Miller and Swan* v. *Graham, Treasurer, etc.*, 17 Ib. 1, should have been applied, and the demurrer overruled.

*S. J. Murray*, for defendants in error:

1. The judgment of the district court sustaining the demurrer to the answer is correct, because it determines the plaintiff's right to the relief sought, and no other issue made in the case could defeat that right, or become a good defense. 14 Ohio, 502, 606; 10 Ohio St. 44; Ib. 253; 8 Ib. 405; 12 Ib. 437; 15 Ib. 392.

2. The jurisdiction of the commissioners over the persons to be affected by their order, depended upon the filing of a petition signed by a majority of legal petitioners, and a return by the viewers appointed to make a survey and schedule of the lands *benefited*, showing a majority of legal

petitioners. *Burgett* v. *Norris*, 25 Ohio St.; 3 Ohio, 227, 228; 2 Ib. 251, 252; 5 Ohio St. 109; 11 Ib. 497; 12 Ib. 635; 13 Ib. 506; 14 Ib. 213; 3 Green, 340; *Hays et al.* v. *Jones et al.*, Supreme Court Com., Dec. Term, 1875.

3. The return of the viewers defines the *boundaries* of the " *territory sought to be assessed*," and the powers of the commissioners " *to supply omissions*," under the act of May 9, 1868 (S. & S. 676), are limited to and restricted *within this territory*.

4. The legislature has no power, by enacting a *curative* statute, to *create* where nothing existed, to *give life* to that which had no vitality, to *indirectly* authorize that which the act itself does not countenance, to *extend* jurisdiction over territory or persons which could not be reached directly and in the first instance; nor to cut off rights to some which are extended to others. Const., art. 2, sec. 28; 12 Ohio, 364; 10 Ib. 384; 16 Ib. 599; 11 Ohio St. 641; 15 Ib. 209.

5. The judgment in the case of *Ellis* v. *Comm'rs of Brown Co. et al.*, referred to and set up by the plaintiffs below in their petition, is a judgment *in rem*, and concludes everybody (see note to *Duchess of Kingston's case*, 2 Smith's Lead. Cas. 593), and is a complete bar to any assessment by the commissioners upon their lands. 12 Ohio St. 11; 5 Ohio, 460; 6 Ib. 529; 7 Ohio St. 162; 10 Paige Ch. 348; Story Eq. Pl. 786; 4 Comst. 71. By that adjudication, their rights in the premises became and were *vested rights;* they were decreed to be *beyond the boundaries of the " territory sought to be assessed."*

6. An equitable estoppel can not arise, nor will one be enforced, when the effect of the application of the doctrine of an equitable estoppel would be a fraud upon others. *Pendleton* v. *Richey*, 8 Casey, 58, 63.

WHITE, J. The order of the county commissioners, directing the improvement in question to be made, was entered on their records, under the act of April 5, 1866. 63 Ohio L. 115.

It is admitted that a majority of the resident land-holders, having lands within two miles of the improvement, which were reported by the viewers for assessment, signed the petition before the order for the improvement was made.

The order, therefore, was valid under the act of 1866. But under that act only the lands thus reported by the viewers could be assessed to pay for the improvement.

It is also admitted that counting the resident land-holders, whose lands were subsequently added for assessment, in pursuance of the order of the commissioners of January, 1870, a majority of all the resident landholders, whose lands were finally assessed, did not sign the petition.

The question therefore arises, whether the commissioners were authorized to make this addition of lands for assessment after the improvement was ordered.

The authority is claimed to be derived from the act of March 31, 1868, and section 5 of that act, as amended May 9, 1868. S. & S. 675.

Section 2 of the act first named provides, that pending proceedings may, at any stage thereof, be made to conform to the provisions of that act.

Amended section 5 provides as follows : " If at any time after making such final order (the order for the improvement), the commissioners shall find that there has been an omission of lots or lands within the territory sought to be assessed, or that there has been manifest injustice in the apportionment of taxes, . . . they are authorized to make such addition and apportionment as they may deem just and proper." . . .

Under this provision we think the commissioners were warranted in making the addition of the lands for assessment which they did make.

After the confirmation of the report of the apportionment committee, no additions can be made. *Glenn* v. *Waddell*, 23 Ohio St. 605. But until such confirmation we see no good reason, if lands have been omitted which are benefited and ought to be assessed, why they may not be

added, and thus made to bear their proper proportion of the cost of the improvement.

How the lands, in this case, came to be omitted does not appear; but the commissioners found them to have been omitted by the viewers; and this finding we are bound to presume to have been warranted by the facts.

The lands omitted, to come within the meaning of the above provision, must be " within the territory sought to be assessed ; " and it is claimed, on behalf of the defendants in error, that the boundary of such territory is limited by the report of the viewers.

We do not think so. Construed in connection with other provisions, and in view of the scheme of improvement for which the statute provides, the terms " the territory sought to be assessed," embrace all the lands within two miles of the improvement which are benefited by it.

It is also claimed that, after the omitted lands have been added, a majority of the resident landholders, whose lands are *finally* assessed, must have signed the petition in order to render the proceedings valid.

No such limitation on the authority to make additions is found in the statute. The power is not called into exercise until the improvement has been ordered; and it may be, as was the fact in the present case, not until the work has been let. To deny the exercise of the power except at the risk of invalidating the previous proceedings, which were valid when done, would, in a great measure, defeat the objects which the power was intended to accomplish. Where the proceedings are carried on in good faith, we do not think the adding of additional lands under the power referred to, can affect the validity of the previous proceedings, whether such lands are owned by residents or non-residents.

It is contended, that giving to the act of 1868 this construction, and applying it to pending proceedings, is an interference with vested rights, and brings it in conflict with section 28, article 2, of the constitution.

That this claim is not well founded, we regard as already

settled by the principles decided in *Miller* v. *Graham*, 17 Ohio St. 1, and in *Burgett* v. *Norris*, 25 Ib. 309.

The same principle is fully recognized by the Court of Appeals of New York in *Howell* v. *City of Buffalo*, 37 N. Y. 267.

Under the act of 1868 as amended, as well as under the act of 1866, the same description of lands are required to be assessed to pay for the improvement, viz., the lands benefited, and lying within two miles of the improvement.

The difference in the operation of the two acts, in this respect, is, that under the former the lands were ascertained exclusively by the viewers ; under the latter, a power of supervision is invested in the commissioners, who, within the two miles limit, are authorized to enlarge the basis of the assessment by adding lands that may have been omitted by the viewers, but which are in fact benefited and ought to be assessed.

Reference is made in the petition to a suit of *Ellis et al.* v. *The Commissioners et al.*

At the time the petition was filed in this case, that suit was still pending. We deem it unnecessary here to refer to it, further than to say that it furnishes no grounds to the plaintiffs below for the relief which they seek by their petition.

Judgment reversed, demurrer to the answer overruled, and petition dismissed.