Follett, J.
The questions in those cases are similar, and all arise in the case of Thompson v. Love, except one, and that one relates to the disqualification of county commissioner Lindley M. Rranson to act in case of Jamison v. Love.
The original proceedings were instituted before the county commissioners of Harrison county, to straighten and improve what is known as the “ Cadiz and Union vale ” road, .in the case of Thompson v. Love; and to straighten and improve what is known as the “ Cadiz and Harrisville ” road, in the case of Jamison v. Love, and to do this under the provisions of the Revised Statutes relating to “ Two-Mile Assessment Pikes,” sections 4829 to 4864.
In each case the petition for such improvement was pre sented to the commissioners on March 6,1882, and a bond with sureties was given by the petitioners for the payment of the costs, in case the improvement should not be finally ordered, which bond was accepted and approved by the commissioners. The commissioners thereupon, on the same day, appointed viewers and a surveyor, or engineer, under section 4831, and ordered that they meet on April 4, 18S2, in one case, and on April 11, 1882, in the other case, to make their view and survey, and that they report their proceedings to the next regular session of the commissioners.
The petition asked that said road lie straightened, as well *65 as improved, and the report of the viewers and surveyor shows that it was straightened.
The reviewers and surveyor made their report to the June session of the commissioners, and the commissioners, at that session, made a final order that said improvement be made; which order states the kind of improvement, the width and extent of the same, and the lands which shall be assessed for the expense thereof.
Thereupon the plaintiffs commenced their action in the common pleas to enjoin the execution of said final order, alleging in their petition various grounds upon which they claimed the proceedings to be illegal and void. Answers were filed by the defendants, and a reply by the plaintiffs. The case was heard in the common pleas, and a final judgment rendered, enjoining the proceeding. From this judgment the defendants appealed to the district court, where the case was re-tried and a final judgment rendered, by a divided court, dissolving the injunction and dismissing plaintiffs’ petition, with costs.
The object of the present proceeding is to reverse this judgment of the district court. It is not necessary to state at jength the substance of the pleadings, which are quite voluminous, because the district court has stated in writing its conclusions of fact found separately from its .conclusions of law, and the errors assigned in this court are based upon what is claimed to be erroneous conclusions of law of the district court upon the facts so found.
I. Was there error as to the notices ?
The conclusions of fact so found by the district court show that no notice whatever was given, of the filing or presentation, to the county commissioners of said county, of the petition for said improvement.
And the court decided, as matter of law, that no notice was required of the filing or presentation of said petition.
In so deciding the court did not err.
The court also found that no notice whatever of the time and place of meeting of said Viewers and surveyor on the fourth and eleventh of April, 1882, was published, excepting a notice published by the auditor of said county, on the six- *66 tcenth day of March, 1882, and twenty-third day of March, 1882, and on the thirtieth day of March, 1882, in two newspapers published in said county, called the “ Cadiz Sentinel ” and the “ Cadiz Republican,” respectively, of which notice in the case of Thompson v. Love, the following is a copy, to wit:
“ PIKE NOTICE.
“ Auditok’s Office, Haeeison County.
• “ Cadiz, Ohio, March 10, 1882.
“Notice is hereby given, that a petition was presented to the commissioners of Harrison county, Ohio, at their March session, 1882, asking that a view and survey be had on the direct road leading from Cadiz to Unionvale; beginning at the gate of the Cadiz cemetery (being the terminus of Cadiz macadamized road), thence by said direct road to the west end of the Unionvale bridge, all in said county, and asking that said road be improved by macadamizing, under the two-mile assessment act; and bond with approved security having been filed, according to law, the board appointed Alexander Henderson, Cyrus T. Long and John N. Haverfield, viewers, and Jacob Jarvis, surveyor, to meet at the auditor’s office, Cadiz, Ohio,' on Tuesday, April 4, 1882, at ten o’clock, a. m., who, after being duly sworn, shall proceed to view and survey said road as provided by statute (§§ 4831, 4833, 4835.
“ James M. Scott, Auditor.
“ March 16. 3w.”
The notice in case of Jamison v. Love is similar.
The court decided from the foregoing facts, that said notice was sufficient in form and substance, and that sufficient publication thereof was made.
In so deciding the court did not érr. No one complains that he was not notified.
II. Were the acting officers competent and duly qualified?
The viewers and surveyor or engineer must take “ an oath faithfully and impartially to discharge the duties of their appointments .”
And the court found, “ That the viewers and surveyor, appointed by the commissioners of said county, or any or either *67 of them were not sworn nor affirmed to discharge the duties of their appointment, except by the auditor of said county, who assumed to and did administer an oath to them to faithfully and impartially discharge the duties of their respective appointments.
“ That said auditor, at and before the administration of said oath by him, had signed the petition for said improvement, and then owned a lot within two miles of said improvement, which was afterwards reported as benefited thereby, and to be assessed for the expense of the same.
“ The court decide, as a matter of law, on the foregoing facts, that the county auditor had authority to administer an' oath to said viewers and surveyor, and that they were sworn according to.Jaw.”
There was no error in so deciding.
Plaintiff in error, Jamison, claims that, in his case, the proceedings of the board of county commissioners áre invalid by reason of the following facts found by the court:
“ That Lindley M. Branson, one of the county commissioners of said county, was the owner in fee simple in severalty, of a large quantity of land in said county, and within two miles of. said improvement, at and before the time when the petition for said improvement was presented to the county commissioners of said county; his said land is reported as benefited by said proposed improvement, and to be assessed therefor.
“ After the report of the viewers and surveyor was filed, but before the final order for said improvement was. made, viz., June 5, 1882, said Branson signed the petition for said proposed improvement, and also requested several other resident land-owners of said county, who owned land within two miles of said proposed improvement, to sign the petition therefor, that said Branson requested John Moore, a resident land-owner of said county, whose lands are within two miles of said proposed improvement, to sign a petition therefor, and said Moore objected to doing so on account of his temporary financial embarrassment, whereupon said Branson offered'to loan him money to pay his assessment in case said improvement should be made.
*68 “ That ‘William S. Fox, who was appointed surveyor for said improvement, owned no land subject to assessment, but was, at and before his appointment, and still is, a brother-in-law of said Branson, and had, before his appointment, as said Branson knew, been actively engaged in obtaining petitioners for said improvement, and after his appointment he continued to electioneer in favor of said improvement.
“ That said Branson overtook said viewers and surveyor, and accompanied them over a small part of the line of said proposed improvement, while they were making their view and survey thereof.
“ That in the selection and appointment of said viewers and surveyor, and in the hearing and decision upon their report, and in determining whether or not the petition for said improvement was signed by a majority, and in making' the final order for said improvement, which was made by the county commissioners of said county, and in the discussion and decision of all other questions and matters relating to said proposed improvement, said Branson sat with, and acted as a member of the board of county commissioners, and voted on all questions pertaining to said proposed improvement.
“ That when said Branson signed said petition, the petition for said proposed road improvement was signed by a majority of the resident land-owners of said county, whose lands lie within two miles of said proposed improvement, and that said Branson was then aware of the provision of the statute as to such road improvements, when defeated by persons who sign the petition therefor, and afterwards remonstrate against the same, being liable for the costs and expenses of the proceeding. ,
“ That upon the filing of the report of said viewers and surveyor, the plaintiffs in this action objected to said Bran-son sitting or acting as a member of said board of county commissioners in the hearing and decision of the questions arising thereon, upon the grounds stated in the petition in this case.
“ But said board of county commissioners, said Branson *69 acting with tbe other two members, refused to exclude said Branson.
“ On the foregoing facts, the court hold and decide that said Branson was not disqualified from acting as a member of said board of county commissioners in the hearing and determination of any of the questions or matters arising in said proceeding before said board of county commissioners, and that said proceedings of said board are valid, notwithstanding the facts hereinabove found by the court.'5
And plaintiff in error, Thompson, claims that in his case there was error by reason of the following facts, found by the court, “ That Jacob Jarvis, who was appointed surveyor for said improvement, on the sixth of March 1882, had previously signed the petition for said improvement, and then owned and still owns part of a lot which is reported as benefited by said proposed improvement, and ought to be assessed to defray the expense of the same. That said Jarvis at no time withdrew his name from said petition.
“ And further find the fact to be, that said petitioners at no time, previous to the making of the final order by the county commissioners, made any objection to the said Jarvis, on account of his said interest, neither did they make any objection to the viewers’ and surveyor’s report on that account.
“ On the foregoing facts the court decide that said Jarvis was not disqualified by reason of his interest in said proposed improvement from acting as surveyor, and that his appointment, and action as such was valid and legal.”
The question is, should further proceedings in these cases be stopped because of the facts found by the court %
The statute defines what shall be done and who shall act. Revised Statutes, section 4829 reads, “ The county commissioners of any county shall have power, as hereinafter provided, to lay out and construct any new county road, or to improve any state, county, or township road, or any part thereof, or any free turnpike road, or any part thereof not completed, by straightening or altering the same, and by grading, paving, graveling, planking or macadamizing the same,” &c. And county commissioners alone can do this.
*70 And-section 4831, after providing for the presentation of a petition and the filing of a bond, as was done in each case, reads, • “ the commissioners shall appoint three disinterested freeholders of the county as viewers, and a competent surveyor or engineer, to proceed, upon a day to be named by the commissioners, to examine, view, lay out, or straighten such roads, as in their opinion public convenience and utility require.”
The three men who were viewers in both of these cases, must have fully met the requirements of the law, as there is no complaint against either of them.
As showing what each one has to do until the report is filed, read the following sections of the statute :
“ Section 4833. The viewers and surveyor or engineer, shall meet at the time and place specified by the commissioners, and after taking an oath faithfully and impartially to discharge the duties of their appointments, shall take to their assistance two suitable persons as chain-carriers and one marker, and proceed to view, examine, lay out or straighten such road, as in their opinion public utility and convenience require, and assess and determine the damages sustained by any person through whose premises the road is proposed to be laid out, straightened or improved; but the viewers shall not be required to assess damages to any person except minors, idiots, or lunatics, in consequence of the appropriation of any private property for the making of the improvement, unless the owner thereof, or his agent, file a written application with the viewers, giving a description of the premises on which damages are claimed by them,” ésa.
“Section 4834. All applications for damages shall be barred, unless they be presented as above required, and any person feeling aggrieved by the assessment made may demand of the commissioners to have the same assessed by a jury, in which case the claimant may appeal to the probate court of the county, and the same proceedings shall there be had, and like orders and judgment rendered, as are provided in chapter four but the guardian of any minor, idiot, or insane person *71 may act for bis ward, and all bis acts shall be binding upon the ward.”
Tbe foregoing provide carefully for all the rights of such owner, and the commissioners do not determine the sáme, neither does the surveyor or engineer. After these are determined, section 4835 provides :
“ The viewers, and surveyor or engineer, shall make a report to the commissioners at their next regular session, showing the public necessity of the contemplated improvement, the damages claimed, and by whom, the amount assessed to each claimant, an estimate of the expense of the improvement, and the lots and lands which will be benefited thereby, and ought to be assessed for the expense of the same,” &e.
The surveyor or engineer has to perform no judicial act under the duties of his appointment. Then comes the following :
“ Section 4836. When the report is filed, the commissioners shall, if in their opinion public utility require it, enter on their records an order that the improvement be made,” &c.
In these cases the reports had been filed and the commissioners had entered on their records, orders that the improvements be made, when further proceedings were stopped. Up to this point in the proceedings no act, judicial in its nature, had been required of the commissioners, and Branson was not disqualified, so that he could not act as such commissioner.
It does not appear that one or both of the other two commissioners were not as much disqualified as was Branson, and it does not appear that they were influenced by Branson ; and it seems to be admitted that Branson could act if it was a necessity that he should. This is conclusive against the plaintiffs! But upon principle the facts found do not show disqualification.
The subject of interest in one exercising judicial powers, is discussed in Wilbraham v. County Commissioners, 11 Pick. 322, by Shaw, C. J.; and the court reach the conclusion that, “ The circumstance that a county commissioner is a taxable inhabitant of a town through which a contemplated road is to pass, does not constitute such an interest as will disqualify *72 him to act as a county commissioner in the proceedings relative to laying out and making a road.
“ The circumstance that a son and a brother of a county commissioner-have joined with others in a petition that a road may be laid out, does not disqualify him to act on the question of common convenience and necessity of the road, it not appearing that the son or brother has any other than a pxiblic interest in the subject in the petition.”
That the objection was waived by not objecting at the time, had been decided by the same court in Ipswich v. County Commissioners, 10 Pick. 519. And this last case "was followed in Robb v. Brackman, 38 Ohio St. 423, and applied to township trustees when dividing a partition fence; and it is added, “ We do not mean it to be implied that such an objection, if not waived, would be available in cases where a competent number of trustees cannot be had free from the objection, and the function to be performed by the trustees can be exercised by no other body.”
In Danvers v. County Commissioners, 2 Met. 186, the court approves Wilbraham v. County Commissioners, and explains apparent confusion. Shaw, C. J., says, “ Upon this exception, the court are of opinion that a commissioner is not disqualified from acting, in consequence of a small, indirect and contingent interest, which he may have as an owner of land in one of the towns through which the proposed highway may pass. This was fully considered and the reasons assigned in Wilbraham v. County Commissioners, 11 Pick. 322. It is probable that a contrary impression, in regard to the law, was received, and might have caused the opinion upon which Mr. Wildes, the chairman of the commissioners, acted in the present case, from the case of Ipswich v. County Commissioners, 10 Pick. 519. But upon examining the latter case, it will appear that no such opinion was expressed. The exception was taken, and the fact was admitted. Two answers were given to it; first, that the fact did not show such an interest as would work a disqualification ; and secondly, that those who then took the exception had waived it, by proceeding to a hearing on the merits, knowing the fact, but taking no ex *73 ception. The court decided the case upon the latter ground. Without any determination of the question, whether the minute interest of the commissioner would have disqualified him, had the exception been seasonably taken, the court placed their adjudication exactly on the point, that if the exception was well founded, it had been waived. This decision carried no implication that the court considered the exception a valid one. It may seem to be a matter of surprise, that the case of Ipswich v. County Commissioners, was not cited by the counsel or court in the latter case, in 11 Pick. 322. But it will appear by inspection, that the 10th volume was not published, till long after the decision in the 11th was made. And there is no doubt that the report of it was prepared before the former case was published ; otherwise, it would have been referred to in the opinion.”
See also Lima v. McBride, 34 Ohio St. 338, and cases cited.
There was no disqualification as to Branson, or as to Cox, or as to Jarvis; and the court did not err as to either.
III. What power have the commissioners ?
Section 4836 also says, “ but such order shall not be made until a majority of the resident landholders of the county, whose lands are repoHed as benefited, and ought to be assessed, subscribe the petition mentioned in section 4831,” &e.
This court held in Burgett v. Morris, 25 Ohio St. 308, that, “ The report of the viewers and surveyor .... furnished the legal data, from which the commissioners, by comparison, were to determine whether the required majority had in fact so signed the petition.” And again, in Parker v. Burgett, 29 Ohio St. 513, the court say, “ it is not necessary that a majority of the resident landholders whose lands ara finally assessed should have signed the petition, in order to render the proceedings valid.” The commissioners have no power to review the report and change it as they judge best.
The reports in these cases were made and filed as required, and those who made and filed them are not charged with fraud, and each gave the commissioners jurisdiction to act in that case ; and the commissioners, if in their. opinion public *74 ■utility required it, must enter on their records an order that the improvement be made. There was no error as to them.
IT. Was there error as to landholders %
The court, after examining the qualifications and number of petitioners, finally found, upon the conclusion of fact and of law, that the jjetition for said improvement, at the time of making the final order for the same, was signed by a majority of the resident landowners of said county, whose lands were reported as benefited and ought to be assessed to defray the expense thereof, and that the plaintiffs’ petition ought to be dismissed.
Section 4836 reads, “ In determining such majority, minor heirs shall not be counted fór or against the improvement, unless represented by legal guardian, and the action of such guardian shall be binding upon such minor heirs; and all heirs or owners, either adults or minors, to any undivided estate, shall only be entitled to one vote for or against such improvement.”
The court found that,
“ 1. Black, S. Dwight,
2. Carruthers, Thomas,
3. Croskey, Wm. Jr.,
4. Grove, William,
5. Ilinkle, John,
6. Morgan, Harvey,
7. Mitchell, James H.,
were each, at the time said final order for said improvement was made, the owner in severalty in fee simple of small lots or pieces of lands, lying in said county, and within two miles of said improvement, and which will be benefited thereby, and ought to be assessed therefor, and were each of full age, and residents of said county; that the viewers and surveyor intended to report their respective lots and lands for assessment, but by mistake the same were omitted from said report; that prior to the making of said final order for said improvement, the plaintiffs requested the county commissioners to have said report of the viewers and surveyor corrected, so as to embrace said lots and lands, and to count each of said per *75 sons as a landowner, in determining whether or not the petition for said improvement was signed by a majority of the resident landowners, but said commissioners refused to have said report so corrected, and refused to count either of the seven persons last above named, as a landowner. Neither of said seven persons signed the petition for said improvement.
“The court finds and decides as the law of this case, that neither of said seven persons should bo counted as landowners in determining whether or not the petition for said improvement was signed by a majority, as required by law.”
In so deciding the court did not err, as the commissioners were governed by the report.
The Court found that there were the
“ 1. M. E. Church (1),
2. M. E. Church (2),
3. M. E. Church, African,
4. Presbyterian Church,
5. U. P. Church,
and that each of said churches is the owner in fee of a parcel of land, within two miles of the proposed improvement, consisting, in each case, of a lot on which is a house for public worship only. All the lands adjoining each of them are reported for assessment by the viewers and surveyor. They are not. The Eirst M. E. Church has a lot and parsonage separate from the church lot, which is not reported for assessment. They, the viewers and surveyor, had no discussion as to whether church property was assessable or not, and never thought of the churches in making their view and report. Said Presbyterian church also owns a lot of land within two miles of said improvement, used for hitching purposes, separate from the church building. It is not reported for assessment.
“ Neither of said churches signed the petition for said improvement.
“ On the foregoing facts the court decide that neither of said churches should be counted in determining whether said petition was signed by a majority.”
In thus deciding the court did not err. We do not wish to be understood as expressing the opinion that the commis *76 sioners could not have referred the report for proper correction before acting on the same; but we say that after the commissioners have exercised their discretion and have acted upon the report as it was, the further proceedings in the case will not be enjoined because persons an.d lands have by mistake been omitted from the report.
The court found that, “ Cassell, J. W., has the legal title in fee simple to a lot of land in the town of Cadiz, in said county, reported for assessment in his name; that on the sixteenth day of November, A. D. 1880, he contracted in wilting with J. W. Gillespie to sell said lot to him for $866.25, payable $400 in hand and $466.25 in one year, and to execute a deed to him for said lot upon payment of said last named sum; the first payment has been made by Gillespie, and he has given his note for the balance, but the same has not been paid, though he is solvent and responsible. He has had the property insured in his own name and has been paying taxes since his purchase. Said Cassell was a resident of said county at the time said final order was made, and did not sign the petition for said improvement.
“ Upon the foregoing facts the court find and decide as the law of this case, that said J. W. Cassell was not a landowner when said final order was made, and should not be counted in determining the question whether or not the petition for said improvement was signed by a majority as required by law.”
Cassell was a vender of land sold to a purchaser who went into possession, and in deciding said vender should not be counted ; there was no error.
The court found that, “ Carter, Charles, on May 25, 1868, made a written contract for the purchase of a lot, reported for assessment, of which the following is a copy, to wit:
“ ‘ This article of agreement witnesseth, that E. Z. Hays and S. J. Beebe have sold to Charles W. Carter, of Cadiz, Ohio, the following lot of grounds in the town of Cadiz, Harrison county, Ohio (good description), in consideration whereof, the said Charles W. Carter agrees to pay the ■ said Hays' and Beebe the sum of $165, as follows : $55 on or before Nov. *77 20, 1868 ; $55 on or before Nov. 20, 1869 ; and $55 on or before Nov. 20, 1870, with interest from date, payable annually.
‘ E. Z. Hats. ‘ May 25, 1868.
Stewaet J. Beebe. ‘ Attest:
ChaRLEs W. Carter.’ ‘D. S. Bruce.
“ When the final order for said improvement was made, there was a balance of more than $60 due on said contract, and Carter bad built a bouse on it worth $100. Said Carter was then a resident of said county, and in possession of said premises, and signed the petition for said improvement. The premises are taxed and reported for assessment in Carter’s name, and be has been paying the taxes. The contract is in full force. E. Z. Hays and S. J. Beebe are both non-residents.
“ On the foregoing facts, the court decide that said Carter was a landowner when the final order for said improvement was made, and shall be counted as such, and as a petitioner for said- improvement in determining whether or not the petition for said improvement was signed by a majority.”
There was no error.
The court found that, “ Bowers, Win., made a verbal contract, fifteen or eighteen years ago, with W. B. Beebe, for a lot reported for assessment; he was to pay $100 for it, $25 per annum until all was paid, with six per cent, on deferred payments. The deed was to be made when all the purchase money was paid. At the time the final order was made there was a balance of $34 due the vendor. There was no stipulation in the contract as to the payment of taxes or assessments. The vendor paid the taxes part of the time, but for a number of years the property has been taxed in the name of the purchaser. He has made some improvements, built a dwelling house thereon, and has obtained a deed for the lot since the final order was made. At and before the time when the final order was made he was a resident of said county, and signed the petition for said improvement. W. B. Beebe, this vendor, owns other property reported for assessment.
*78 “ On the- foregoing facts, the court decide that said Wm. Bowers was a landowner, and shall be counted as such, and as a petitioner in determining whether or not the petition for said improvement was signed by a majority.”
Vendees in possession under valid contracts may be regarded as landholders; and in so deciding there was no error.
The court found that, “ Cope, Joseph and wife, owned in fee simple one hundred and sixty acres of land. Ilis wife united with him in the execution and delivery of a deed to each of their two sons, Benjamin and Oliver respectively. Each deed describes eighty acres of land, and is in all respects an ordinary deed of warranty, save that it contains the following clause : ‘And the said Joseph Cope and Ruth his wife, for themselves and their heirs, do covenant with the said Oliver G-. Cope, his heirs and assigns, that they are lawfully seized of the premises aforesaid and that the said premises are free and clear from all incumbrances whatsoever, except the said Joseph Cope and Ruth, his wife, retain the entire use and control of said tract of land, with all the privileges and appurtenances during their natural lives and during the natural life of the survivor of either of them, and they will forever warrant and defend the same with the appurtenances, unto the said Oliver Gf. Cope,’, etc. ,
“ Said lands are reported for assessment in the name of ‘ Cope, Joseph.’ Said deeds were executed and delivered prior to the making of the final order for said improvement, and said Joseph Cope and wife were, at and before that time, residents of said county.
“ On the foregoing facts, the court decided that said Joseph Cope and wife are together to be counted as only one landowner in determining whether or not the petition for said improvement was signed by a majority.”
Owners of estates for life may be held to be landholders ; and,holding a joint estate, they are to be counted as one; and there was no error in so deciding.
The court found, that, “ Prior to the making of the final order for said improvement, Geo. Hesford died intestate, seized of a small parcel of land, reported for assessment in *79 the name of Hesford, George (heirs), and leaving a number of children.
“ A proceeding in partition was instituted by one of the heirs, and one of the parties thereto, viz., said John Hesford, after due legal proceedings, elected to take the property at the appraisement.
“ The court approved said election, and ordered the deed to be made by the sheriff to the party so electing, upon the payment to each of the heirs, the part of the appraised value thereof, so found to be due to them respectively. Said Jno. Hesford, prior to the making of the final order for said improvement, had paid to each of said heirs their respective portions, and taken their receipts therefor, and the costs had been paid. But said John Hesford has never received a deed for said property.
“ At and before the time when the final order for said improvement was made, said Jno. Hesford was a resident of said county, and signed the petition for said improvement.
“ On the foregoing facts, the court decide that said John Hesford was a landowner, and shall be counted as such, and as a petitioner for said improvement, in determining whether or not the petition for said improvement was signed by a majority.”
In so deciding there was no error.
The court found that, “ Brown, Agnes, on the twentieth of November, 1871, made a written contract with W. B. Beebe, by which she bought of him a parcel of land, reported for assessment, for $100, of which $25 was payable in hand, and was paid, the residue was payable in three annual installments, with interest, but no part of the deferred payments have been made. The lot is unimproved and was never occupied by the vendee.
• “Nothing has ever been said between the parties looking to a rescission of the contract. She has paid no taxes on said property,and is not in possession of the same.
“ Said Agnes Brown was of full age and unmarried when the contract was made, and was then and ever since has been a resident of Harrison county.
*80 “Upon the foregoing facts, the court decide that said Agnes Brown was not a landowner, and has abandoned said contract, and should not be counted on the question of majority.”
The court did not err in so deciding.
The court also found that: “ Voshall, Susan P. (now Susan P. Osborn), prior to the making of the final order for said improvement was the owner in. severalty in fee simple of a lot of land reported for assessment, and signed the petition for said improvement.
“ Prior to the making of the final order she was married to Mr. Alexander Osborn, who was then a resident of Canton, Stark county, Ohio.
“ After the marriage the wife remained in Cadiz, with no intention of removing, and doing business in the name of Susan P. Voshall, the fact of their marriage being concealed from their friends and the public.
“ About the first of September, 1882, and after the final order for said improvement was made, the husband moved to Harrison county and has there resided ever since.
“ On the foregoing facts the court decide that said Susan P. Voshall (now Osborn) was a resident of said county of Harrison at the time the final order for said improvement was made, and shall be counted as a resident land-ownei and a petitioner for said improvement, in determining whether or not the petition for said improvement was signed by a majority.”
A single woman, having a residence and domicil, does not lose the same by marriage only ; she retains the same until, she otherwise abandons it.
The court did not err in deciding that she, should be counted.
The court found that: “ Forker, H. G-., is a clerk in the post office department at Washington, E>. C. ; his business there keeps him employed continuously throughout the year; he has been employed in that capacity for three months prior to the making of the final order for said improvement. Prior to going to accept the position, he kept house in Cadiz with a *81 widowed sister and her daughter in his house in Cadiz; he is himself unmarried. Since the making of -the final order he voted at the state election in Cadiz, his vote was not challenged ; he considers Cadiz his place of residence, and that he is in "Washington, D. C., on temporary business only; he is the owner of a lot reported for assessment, and signed the petition for said improvement.
“ On the foregoing facts the court hold that said Forker was a resident of said county at the time the final order for said improvement was made, and shall be counted as a landowner and petitioner in determining whether or not the petition for said improvement was signed by a majority.”
Tliere was no error.
The court found that as to “ Crosbey, Mrs. ¥m,, Sr. — A farm reported for assessment originally belonged to her husband, who, prior to the making of the final order for said improvement, deeded it to his son John. John, in consideration therefor, among other tilings, executed a mortgage thereon, to his father, duly recorded, by which he secured the payment of portions to his sisters, and a comfortable support to his father and to his mother during their natural lives. His father died prior to the making of the said final order. His mother is still living, and was, at and before the making of said final order, a resident of said county; the land is taxed in the name of John, and is reported for assessment in his name.
“On the foregoing facts, the court decide that Mrs. Wm Croskoy was not a land-owner when the final order for said improvement was made, and cannot be counted as such, in determining whether or not the petition for said improvement ■was signed by a majority.”
The court did not err.
The court found that: “ Hurford, Joseph, was and is a lunatic, and D. A. Cunningham was and is his duly appointed and qualified guardian. Said Hurford was the owner in sev-eralty in fee simple of lands reported for assessment, and he and his said guardian were and are residents of said county, and said guardian signed the petition for said improvement.
“ On the foregoing facts the court decide that said Joseph *82 Hurford, acting by bis said guardian, shall be counted as a petitioner for said improvement, in determining whether or not said petition was signed by a majority.”
The court did not err.
The court found that as to “John Smith’s heirs, their father died several years ago, intestate. Their mother has since died. There are four children residents of said county, three of whom are of age ; the fourth, Robert, is a minor and has no guardian. They all signed the petition, and are tenants in common of land reported for assessment, inherited by them from their father.
“ On the foregoing facts the court decide that the three adult children of John Smith, deceased, shall, together, be counted as one vote in favor of said improvement, in determining whether or not the petition therefor was signed by a majority.”
The court did not err.
We have carefully examined all the other matters assigned as error, and find, that there is no error to the prejudice of the plaintiffs in error.

Judgment affirmed.